

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

ALISIA DAILY,

and

GREGORY DANIELS,

For themselves and on behalf of all
similarly situated individuals,

        Plaintiffs,

                                Civil Action No.: 3:09-CV-031

v.

NCO FINANCIAL SYSTEMS, INC.

and

NCO CUSTOMER MANAGEMENT, INC.

and

NCO GROUP, INC.,

        Defendants.

---

NCO FINANCIAL SYSTEMS, INC.

        Defendant/Third-Party Plaintiff,

v.

VERICON RESOURCES, INC.

        Third-Party Defendant.

---

## NCO'S THIRD PARTY COMPLAINT

Defendant/Third-Party Plaintiff, NCO Financial Systems, Inc. ("NCO"), through undersigned counsel and for a Third-Party Complaint against Vericon Resources, Inc. ("Vericon"), states the following:

## NATURE OF THE CASE

1.      The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (FCRA) imposes procedural requirements on employers that use a consumer's public records background check for employment purposes.

2.      Plaintiffs allege that NCO, through its vendor, Vericon, violated provisions of the FCRA relating to background checks.  *See* **Exhibit A**, plaintiffs' Amended Class Complaint.   Specifically, the plaintiffs allege that NCO's consumer report authorization, titled "Applicant Information Release," violated the FCRA, § 1681b(b)(2)(A).   This law prohibits employers from procuring consumer reports for employment purposes without first obtaining written authorization.  The authorization must be a clear and conspicuous written disclosure in a separate document that confirms that the consumer report may be obtained for employment purposes. The plaintiffs also complain that the adverse action letter sent to them violated § 1681b(b)(3)(A) by allegedly failing to provide Plaintiffs and those similarly situated with a copy of the consumer report and their FCRA rights prior to taking an "adverse action," the denial of a job.

## JURISDICTION/VENUE

3.      This Court has jurisdiction over this action pursuant to the FCRA, 15 U.S.C. § 1681n and 1681p.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b) as NCO and Vericon regularly conduct business in this district and division.

5.      This Court has supplemental jurisdiction of the Third-Party Complaint pursuant to 28 U.S.C. § 1367(a), in that the Third-Party Complaint seeks indemnification against Third-Party defendant Vericon for any liability of NCO arising from the alleged violations of the FCRA.

## PARTIES

6.      Plaintiff, Alisia Daily, upon information and belief, is a resident of Virginia Beach, Virginia.

7.      Plaintiff, Gregory Daniels, upon information and belief, is a resident of Spring, Texas.

8.      Defendant/Third Party Plaintiff, NCO Financial Systems, Inc., is a Pennsylvania corporation with its principal place of business located at 507 Prudential Road, Horsham, Pennsylvania 19044.  NCO conducts business in the State of Virginia and in the Eastern District of Virginia.

9.      Third Party Defendant, Vericon, is a Georgia Corporation with its principal place of business located at 2358 Perimeter Park Drive, Suite 370, Atlanta, Georgia 30341.  Vericon is authorized to and does conduct business in the State of Virginia and in the Eastern District of Virginia.

## COUNT I – BREACH OF CONTRACT

10.     NCO adopts and incorporates by reference the foregoing paragraphs.

11.     Vericon is a vendor and service provider of pre-employment information services.

3

12. Effective August 5, 2003, NCO entered into an agreement (the "Agreement") with Vericon for pre-employment information services, including background check services. *See* **Exhibit B**, Agreement.

13. Pursuant to the Agreement, Vericon confirms that its "services will comply with all federal, state and local laws, rules, regulations and standards generally accepted in the relevant trade or industry." Vericon further "agrees to indemnify, hold harmless and defend NCO its past and present partners, directors, affiliates, subsidiaries, officers, agents employees, and contractors, against any loss, cost, or damage that may be sustained by reason of VRI's failure to comply with such laws and regulations, unless resulting solely from the negligence of NCO."

14. Beginning in May 2007, Vericon was retained by NCO to administer NCO's Employee Eligibility Program in addition to all services provided since 2003. As the administrator of the Employee Eligibility Program, Vericon is responsible for applying hiring parameters in accordance to NCO's hiring policies with regards to pre-employment background checks. The administration of said program includes "contacting applicants when information clarification is required, and dissimulating Adverse Action notices as directed by NCO." A copy of the Addendum is attached as **Exhibit C**.

15. Prior to May 2007, NCO administered its own Employee Eligibility Program. From August 2003 until May 2007, Vericon provided NCO with input, guidance, advice from Vericon's legal counsel, language for NCO's adverse action letter(s) and other background check-related forms, and approval of all form documents that mention Vericon.

16.     Vericon provided NCO with and approved the language contained in the "Applicant Information Release" and adverse action letter(s) that allegedly violate the law. To the extent that the language of the Applicant Information Release and/or adverse action letter(s) at issue in this lawsuit violated the FCRA, this was due to Vericon's negligence and constitutes a breach of the Agreement. Vericon also instructed and guided NCO regarding NCO's responsibilities relating to the FCRA, as NCO's FCRA responsibilities exist relating to this case.

17.     To the extent that NCO is found liable to Plaintiffs or other Plaintiffs similarly situated for alleged non-compliance with the FCRA, NCO seeks indemnification from Vericon pursuant to paragraph 1 of the Agreement for all damages, costs and attorney's fees for which NCO is found liable.

18.     NCO also seeks reimbursement for its attorney's fees and related litigation costs for having to defend this case. NCO has made demand upon Vericon for defense and indemnification protection and Vericon has refused.

WHEREFORE, NCO seeks damages, attorney's fees and costs against Vericon, including all fees and costs that NCO incurs defending this matter, and NCO requests that judgment be entered in its favor and against Vericon on all Counts in the Amended Class Complaint in an amount deemed just and as determined at trial.


                                        NCO FINANCIAL SYSTEMS, INC.
                                        NCO CUSTOMER MANAGEMENT, INC.
                                        And
                                        NCO GROUP, INC.

                                        By: _____"/s/"_____
                                                    William D. Bayliss

William D. Bayliss, Esq. (VSB No.: 13741)
bbayliss@williamsmullen.com
Brendan D. O'Toole, Esq. (VSB No.: 71329)
botoole@williamsmullen.com
Williams, Mullen, Clark & Dobbins, P.C.
Two James Center
1021 East Cary Street, 17th Floor
Richmond, VA  23219
Telephone No.: (804) 643-1991
Facsimile No.: (804)783-6507
*Of Counsel*
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

And

Admitted Pro Hac Vice:

David Israel, Esq.
Louisiana Bar No.: 7174
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
Lakeway Two, Suite 200
3850 N. Causeway Boulevard
Metairie, Louisiana  70002-7227
Telephone No.:  (504) 828-3700
Facsimile No.: (504) 828-3737
disrael@sessions-law.biz

Elizabeth Fite Blanco, Esq.
Florida Bar No.: 0644439
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
9009 Corporate Lake Drive, Suite 300-S
Tampa, Florida  33634
Telephone No.: (813) 890-2461
Facsimile No.: (813) 889-9757
eblanco@sessions-law.biz

**EXHIBIT A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ALISIA DAILY,

and

GREGORY DANIELS,

For themselves and on behalf of all
similarly situated individuals.

        Plaintiffs,

v.                            CIVIL ACTION NO.:3:09cv031

NCO FINANCIAL SYSTEMS, INC.

and

NCO CUSTOMER MANAGEMENT, INC.

and

NCO GROUP, INC.,

        Defendants.

---

## AMENDED CLASS COMPLAINT

---

COME NOW, the Plaintiffs, Alisia Daily and Gregory Daniels, on behalf of themselves

and all similarly situated individuals and allege the following claims:

### INTRODUCTION

1.     This action is brought under the Federal Fair Credit Reporting Act (FCRA), 15

U.S.C. §1681, *et seq.* The FCRA imposes on employers that use a consumer's public records

background check several important procedural requirements designed to protect consumers like

Plaintiffs. Plaintiffs applied for jobs at Defendants and Defendants used unauthorized consumer reports containing inaccurate information that they obtained from a credit reporting agency to decline to hire Plaintiffs. In doing so, Defendants failed to comply with the procedural protections and requirements imposed on them by the FCRA.

## JURISDICTION/VENUE

2.     The Court has jurisdiction under the FCRA, 15 U.S.C. §1681n and 1681p.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendants regularly do business in the district and division.

4.     Defendants NCO Financial Systems, Inc. and NCO Customer Management, Inc. also maintain the offices of their registered agents for service of process in Glen Allen, Virginia, which office is located in this district and division.

5.     Defendants have contracted to supply services or things in the Commonwealth of Virginia.

6.     Defendants regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in the Commonwealth of Virginia.

7.     Plaintiffs intends to serve Defendant NCO Group, Inc. through the Secretary of the Commonwealth.

## PARTIES

8.     Alisia Daily (hereinafter "Daily") is a citizen of Virginia Beach, Virginia and a "consumer" as protected and governed by the FCRA

9.     Gregory Daniels (hereinafter "Daniels") is a citizen of Spring, Texas and a

2

"consumer" as protected and governed by the FCRA.

10.     NCO Financial Systems, Inc. (hereinafter "NCO Financial") is a Pennsylvania corporation doing business throughout the United States, including Virginia.

11.     At all times relevant hereto, NCO Financial was a "user" of the consumer reports of Plaintiffs, as governed by the FCRA.

12.     NCO Customer Management, Inc. (hereinafter "NCO Customer Management") is a Pennsylvania corporation doing business throughout the United States, including Virginia.

13.     At all times relevant hereto, NCO Customer Management was a "user" of the consumer reports of Plaintiffs, as governed by the FCRA.

14.     Defendant NCO Group, Inc. (hereinafter "NCO Group") is a Delaware corporation doing business throughout the United States, including Virginia.

15.     At all times relevant hereto, NCO Group was a "user" of the consumer reports of Plaintiffs, as governed by the FCRA.

16.     Securint supplied the consumer reports for each of the class representatives to Defendants.

17.     During the FCRA statute of limitations period, Securint was a "consumer reporting agency" as governed by the FCRA.

18.     During the FCRA statute of limitations period, Securint was regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

19.     Upon information and belief, Defendants also obtained consumer reports from additional consumer reporting agencies during the FCRA statute of limitations period, and those

3

employees and prospective employees who suffered an adverse employment decision are included in the prospective class.

20.    Upon information and belief, any additional consumer reporting agencies that supplied consumer reports to Defendants were regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681(d) to third parties.

### FACTS AS TO DAILY

21.    Daily applied for a job with Defendants in Virginia Beach, Virginia in May 2007.

22.    As part of the application process, Daily may have authorized a consumer report.

23.    If Daily authorized a consumer report, the authorization was not a clear and conspicuous disclosure made in writing before the report was procured in a document that consisted solely of the disclosure.  Thus Defendants lacked a permissible purpose to obtain Daily's consumer report.

24.    Defendants authorized Vericon Resources, Inc. to obtain the consumer report on Daily on their behalf.

25.    Vericon Resources, Inc. obtained a consumer report on Daily from Securint in May 2007.

26.    The consumer report obtained from Securint on Daily incorrectly listed a conviction for sale of a counterfeit record for a different individual.

27.    Vericon Resources, Inc. on behalf of Defendants informed Daily that it had earlier determined that she would not be hired after all because of her consumer report.

28.    Defendants failed to provide Daily with a copy of the consumer report or written

4

summary of her rights under the FCRA before or even at the time they informed her that they had withdrawn their offer of employment.

29.     At the end of May 2007 Daily filed a request for reinvestigation with Securint.

30.     In July 2007 Securint issued a revised report.

31.     At that point Defendants informed Daily that they were no longer hiring.

## FACTS AS TO DANIELS

32.     Daniels applied for a job with Defendants in Texas in November 2006.

33.     As part of the application process, Daniels may have authorized a consumer report.

34.     If Daniels authorized a consumer report, the authorization was not a clear and conspicuous disclosure made in writing before the report was procured in a document that consisted solely of the disclosure. Thus Defendants lacked an impermissible purpose to obtain Daniels' consumer report.

35.     Defendants authorized Vericon Resources, Inc. to obtain the consumer report on Daniels on their behalf.

36.     Vericon Resources, Inc. obtained the consumer report on Daniels from Securint in November 2006.

37.     The consumer report obtained from Securint on Daniels listed convictions for cocaine and cannabis possession for a different individual.

38.     Daniels had been accepted for employment at Defendants subject to the results of the consumer report.

39.     Daniels had actually begun his two week training with Defendants.

5

40.     After the completion of his two weeks of training, Defendants physically removed Plaintiff from their work premises and told him that they had earlier determined that the results of his consumer report barred his employment with Defendants.

41.     Despite Daniels' request for a copy of the consumer report, Defendants refused to provide him a copy of the consumer report or a written summary of his rights under the FCRA before or even at the time they withdrew their offer of employment.

42.     Instead, Defendants provided Daniels with the toll-free telephone number for Securint.

43.     Daniels promptly disputed orally and later in writing to Securint the errors in his consumer report.

44.     Upon information and belief, Securint issued a clear report.

45.     The foregoing process took a number of months and caused Daniels to lose his position at Defendants.

## FACTS COMMON TO ALL PLAINTIFFS

46.     Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who obtain a "consumer report" about employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], a *person* may not procure a *consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless* —
>
> a.     a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
> b.     the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that

6

person.

47.      Section 1681b(b)(2)(A) therefore imposes the duty on Defendants to provide a

"clear and conspicuous" disclosure to prospective or current employees that a consumer report

about them will be procured.  Further,   1681b(b)(2)(A) mandates that the disclosure must be

limited only to a disclosure that a consumer report may be obtained for employment purposes

and to the written authorization of the prospective or current employee; no other documents or

provisions are allowed. Section 1681b(b)(2)(A) thus prohibits Defendants from including or

obtaining other information as part of the disclosure such as a release or waiver of rights or by

using multiple conflicting documents to obtain the authorization.

48.      Additionally, § 1681b(b)(3)(A) of the FCRA regulates the conduct of any person

who uses a "consumer report" to take an adverse action against any employees or prospective

employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a
> position over which the Secretary of Transportation may establish qualifications],
> in using a consumer report for employment purposes, before taking any adverse
> action based in whole or in part on the report, the person intending to take such
> adverse action shall provide to the consumer to whom the report relates –
>
> (i)      a copy of the report; and
>
> (ii)     a description in writing of the rights of the consumer under this
>          subchapter, as prescribed by the Federal Trade Commission under section
>          1681g(c)(3) of this title.

49.      The purpose of  1681b(b)(3)(A) is to provide a prospective or current employees

a sufficient amount of time to review the consumer report,  correct any inaccuracies and to notify

the prospective employer of these inaccuracies before an adverse action is taken.

50.      **Defendants procured consumer reports for Plaintiffs and those similarly situated**

7

for employment purposes without first obtaining their written authorization to do so on a clear

and conspicuous written disclosure in a document that consists solely of the disclosure that a

consumer report may be obtained for employment purposes.

51.     Defendants failed to provide a copy of the consumer report a sufficient amount of

time before they took the adverse action to allow Plaintiffs to discuss the report with Defendants

or otherwise respond before the adverse action was taken.

52.     Defendants failed to hire/fired Plaintiffs without providing them with any

advance notice that they were going to take that adverse action, without providing them with a

copy of the consumer report, and without providing them with a summary of their rights under

the FCRA.

53.     Defendants failed to provide the oral, written or electronic notices required by

FCRA, 15 U.S.C. §1681m to Plaintiffs.

54.     Upon information and belief, it is Defendants' standard hiring practice to rely on

consumer reports, and when the results are unsatisfactory, to fire or refuse to hire/fire people on

the spot without the statutory disclosure or written authorization, without giving them any

advance notice of the adverse action, without first providing them with a copy of their consumer

report, without providing them with a summary of their rights under the FCRA before taking the

adverse action, and without providing most of the oral, written or electronic notices required by

the FCRA.

**Defendants Acted Willfully**

55.     Defendants knew or should have known about their legal obligations under the

FCRA.  These obligations are well established in the plain language of the FCRA and in the

8

promulgations of the Federal Trade Commission. Defendants obtained or had available

substantial written materials which apprised them of their duties under the FCRA. Any

reasonable employer knows about or can easily discover these mandates.

56.     Despite knowing of these legal obligations, Defendants acted consciously in

breaching their known duties and depriving Plaintiffs and other members of the class of their

rights under the FCRA.

57.     As a result of these FCRA violations, Defendants are liable to Plaintiffs and to

each FCRA Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15

U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2) for each of

the four violations alleged herein, and for attorneys fees and costs pursuant to §1681n and

§1681o.

58.     Plaintiffs and FCRA Class Members are entitled to equitable relief against

Defendants requiring their compliance with the FCRA in all future instances and/or re-

employment of Plaintiffs, and enjoining their future violations of the FCRA.

## CLASS ACTION ALLEGATIONS

59.     **The FCRA Class.** Pursuant to Rule 23 of the Federal Rules of Civil Procedure,

Plaintiffs bring this action for themselves and on behalf of a class (the "Class") initially defined

as follows:

> All employees or prospective employees of Defendants residing in
> the United States (including all territories and other political
> subdivisions of the United States) who were the subject of a
> consumer report which was used by Defendants to make an
> employment decision during the FCRA statute of limitations period,
> 15 U.S.C. §1681p, next preceding the filing of this action and
> during its pendency.

9

60. **The FCRA Sub-Classes.** Plaintiff also alleges the following FCRA Sub-

Classses, of which Plaintiff is a member:

    a.    All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendants to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. §1681p, next preceding the filing of this action and during its pendency, against whom Defendants took an adverse action based in whole or in part on information contained in the consumer report before providing a copy of the consumer report as required by the FCRA, 15 U.S.C. § 1681b(b)(3)(A)(i);

    b.    All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendants to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. §1681p, next preceding the filing of this action and during its pendency, against whom Defendants took an adverse action based in whole or in part on information contained in the consumer report before providing a description in writing of the rights of the consumer under the FCRA, as required by the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii);

    c.    All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendants to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. §1681p, next preceding the filing of this action and during its pendency, against whom Defendants took an adverse action based in whole or in part on information contained in the consumer report without providing an oral, written or electronic notice that the credit reporting agency did not make the decision to take the adverse action and is unable to provide the consumer with the specific reason why the adverse action was taken, as required by the FCRA, 15 U.S.C. §1681m(a)(2)(B);

10

      d.     All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendants to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. §1681p, next preceding the filing of this action and during its pendency, against whom Defendants took an adverse action based in whole or in part on information contained in the consumer report without providing an oral, written or electronic notice of the consumer's right to obtain within 60 days a free copy of the consumer report on the consumer from the consumer reporting agency which prepared the report, as required by the FCRA, 15 U.S.C. §1681m(a)(3)(A).

61.    **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

62.    **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

      a.     Whether Defendants violated §1681b(b)(2)(A) by failing to make a "clear and conspicuous" disclosure;

      b.     Whether Defendants violated §1681b(b)(2)(A) by failing to make a "clear and conspicuous" disclosure in a document that consists solely of the disclosure;

      c.     Whether Defendants obtained a written authorization to procure or cause to be procured consumer reports for employment purposes (§1681b(b)(2)

11

(A)(ii));

d.   Whether Defendants provided a copy of the consumer report to the applicant or employee before declining to hire or discharging the applicant or employee based on the results thereof (§1681b(b)(3)(A)(i));

e.   Whether Defendants provided a copy of a summary of the applicant or employee's rights under the FCRA before declining to hire or discharging the applicant or employee (§ 1681b(b)(3)(A)(ii));

f.   Whether the Defendants provided oral, written or electronic notice of the adverse action to the consumer that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer with the specific reasons why the adverse action was taken (§ 1681m(a)(2)(B));

g.   Whether the Defendants provided oral, written or electronic notice of the consumer's right to obtain a free copy of the consumer report on the consumer from the consumer reporting agency which prepared the report (§ 1681m(a)(3)(A));

h.   Whether Defendants knowingly and intentionally acted in conscious disregard of the rights of the consumer;

63.   **Typicality. FED. R. CIV. P. 23(a)(3)).** Plaintiffs' claims are typical of the claims of each Class member. Plaintiffs for class certification purposes seek only statutory and punitive damages. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members

12

of the Class.

64.     **Adequacy.** Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously. FED. R. CIV. P. 23(a)(4). Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the Class.

65.     **Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3). The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

66.     **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate

13

equitable injunctive relief with respect to Plaintiffs and the Class members. FED. R. CIV. P. 23(b)(2).

### COUNT ONE: VIOLATION OF THE FCRA §1681b(b)(2)(A)(i)

67.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

68.     Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(2)(A)(i), because they failed to provide a clear and conspicuous written disclosure in a document that consists solely of the disclosure to applicants and employees that a consumer report may be obtained for employment purposes.

69.     Plaintiffs seek statutory damages for themselves and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

70.     Plaintiffs seek punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

71.     In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

### COUNT TWO: VIOLATION OF THE FCRA §1681b(b)(2)(A)(ii)

72.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

73.     Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(2)(A)(ii), because they failed to obtain a valid authorization in writing to procure a consumer report for employment purposes from Plaintiff and those similarly situated applicants and employees.

14

74.     Plaintiffs seek statutory damages for themselves and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

75.     Plaintiffs seek punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

76.     In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

### COUNT THREE: VIOLATION OF THE FCRA § 1681b(b)(3)(A)(i)

77.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

78.     Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(i), because they failed to provide a copy of the consumer report used to make an employment decision to Plaintiffs and all other similarly situated applicants and employees before taking an adverse action that was based in whole or in part on that report.

79.     Plaintiffs seek statutory damages for themselves and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

80.     Plaintiffs seek punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

81.     In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

15

## COUNT FOUR: VIOLATION OF THE FCRA § 1681b(b)(3)(A)(ii)

82.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

83.     Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii), because they failed to provide Plaintiffs and all other similarly situated applicants and employees the summary of rights required by this section of the FCRA before taking an adverse action that was based in whole or in part on a consumer report.

84.     Plaintiffs seek statutory damages for themselves and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

85.   ↘   Plaintiffs seek punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

86.     In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

## COUNT FIVE: VIOLATION OF THE FCRA §1681m(a)(2)(B)

87.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

88.     Defendants willfully violated the FCRA, §1681m(a)(2)(B) because they failed to provide Plaintiffs and all other similarly situated applicants and employees with oral, written or electronic notice that the credit reporting agency did not make the decision to take the adverse action and is unable to provide the consumer with the specific reason why the adverse action was taken.

16

89.   Plaintiffs seek statutory damages for themselves and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

90.   Plaintiffs seek punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

91.   In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

### COUNT SIX: VIOLATION OF THE FCRA §1681m(a)(3)(A)

92.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

93.   Defendants willfully violated the FCRA, 15 U.S.C. §1681m(a)(3)(A) because they failed to provide Plaintiffs and all other similarly situated applicants and employees with oral, written or electronic notice of the consumer's right to obtain within 60 days a free copy of the consumer report on the consumer from the consumer reporting agency which prepared the report.

94.   Plaintiffs seek statutory damages for themselves and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

95.   Plaintiffs seek punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

96.   In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

17

97.    If and when appropriate, Plaintiffs seek issue certification as to whether Defendants' violations of the FCRA, 15 U.S.C. §1681b and §1681m, were negligent.

98.    Every paragraph in this Complaint is hereby incorporated into every other paragraph.

WHEREFORE, Plaintiffs and the Class Members pray for relief as follows:

1.    an order certifying the proposed FCRA class herein under Federal Rule 23 and appointing Plaintiffs and their undersigned counsel of record to represent same;

2.    the creation of a common fund available to provide notice of and remedy Defendants' FCRA violations;

3.    statutory and punitive damages;

4.    injunctive relief as pled;

5.    attorneys fees, expenses and costs;

6.    pre-judgment and post-judgment interest as provided by law; and

7.    such other relief the Court does deem just, equitable and proper.

TRIAL BY JURY IS DEMANDED.

**ALISIA DAILY AND GREGORY DANIELS**
**For themselves and on behalf of all similarly**
**situated individuals.**

By: ____ /s/ Christopher Colt North _____
                              Of Counsel

Christopher Colt North
VSB #16955
Attorney for Plaintiffs
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax:   (757) 873-8375
Email: cnorthlaw@aol.com

18

**EXHIBIT B**

# AGREEMENT

THIS AGREEMENT effective August 5, 2003 is between **NCO** with offices at 507 Prudential Road, Horsham, PA 19044 and **Vericon Resources, Inc.**, a Georgia corporation with offices at 2358 Perimeter Park, Suite 370, Atlanta, Georgia 30341 (hereinafter "VRI"). The parties intending to be legally bound, mutually agree as follows:

1. VRI represents and warrants the pre-employment information services (hereinafter "the services") as set forth in attached Exhibit A are of a highly confidential nature and that the information thereto is gathered and obtained in good faith by VRI at the express written request of NCO. Further, VRI represents and warrants that the services will comply with all federal, state and local laws, rules, regulations and standards generally accepted in the relevant trade or industry. VRI agrees to indemnify, hold harmless and defend NCO its past and present partners, directors, affiliates, subsidiaries, officers, agents employees, and contractors, against any loss, cost, or damage that may be sustained by reason of VRI' s failure to comply with such laws and regulations, unless resulting solely from the negligence of NCO.

2. NCO acknowledges and agrees that it does not require VRI to attempt to interpret the facts, make recommendations concerning an individual's eligibility for hire, nor will VRI be held accountable for the opinions of those contacted by VRI in order to obtain an objective background verification. The level and depth of the services provided by VRI will be determined by NCO and the limits of the law. Except as set forth in Part 1 above, NCO agrees VRI is absolved from any culpability resulting from the publishing of the pre-employment information by VRI, their employees or authorized agents.

3. We certify that consumer reports, as defined by the Fair Credit Reporting Act, will be ordered only when intended to be used for employment purposes, or otherwise in connection with a legitimate business purpose involving the consumer and will not be used for any other purpose. Each request whose intended use is for employment purposes will be specifically identified to you and reports will only be obtained for specific permissible purposes and for no other purpose.

4. Due to the nature of the services, all candidates for possible employment by NCO shall be informed of and agree to a profile verification and will have signed a release similar to Exhibit B to that effect at the request of NCO.

5. VRI shall treat as confidential all information obtained for NCO. VRI shall not disclose or refer to the services to be performed under this Agreement in any manner which would identify NCO without the express permission of NCO. Nothing, however, in this Agreement shall obligate VRI to treat as confidential any information which:

   i.    is or becomes generally known to the public;
   ii.   is disclosed to VRI, without obligation of confidentiality, by a third party having the right
         to make such disclosure;
   iii.  was previously known to VRI, which fact can be demonstrated by means of documents
         which are in the possession of VRI upon the date of this Agreement; or
   iv.   is required to be disclosed by law, except to the extent eligible for special treatment
         under an appropriate protective order.
   v.    notwithstanding the foregoing, VRI shall not  disclose any information without informing NCO
         in writing at least thirty (30) days prior to disclosure or such lesser time as is reasonable under
         the circumstances, with written support, in order to allow NCO to object.

NCO acknowledges that only those personnel having a need to know the pre-employment information to fulfill NCO' s obligations hereunder will be authorized to request and receive such information contained in either verbal or written reports delivered by VRI.

6. Payment terms are fifteen (15) days upon receipt of VRI invoice unless the amount due is in dispute by NCO. Any dispute on an invoice will be communicated within ten (10) business days, commencing from receipt of invoice. If any invoice is not paid within thirty (30) days of receipt (reasonably calculated), all service will be subject to suspension pending payment of said invoice(s).

7. VRI shall maintain and carry at all times a General Liability policy with no less than $1,000,000 in limits. In addition, VRI shall maintain and carry an Errors & Omission policy with no less than $1,000,000 in limits.

8. All notices, requests, demands or other communications hereunder shall be in writing, hand delivered, sent by first class mail, overnight mail, or facsimile (upon electronic confirmation that the transmission was received) and shall be deemed to have been given when received at the following addresses:

If to NCO:

> NCO, Inc.
> 507 Prudential Road
> Horsham, PA 19044
> Attn: Cherie Sugg

If to VRI:

> Vericon Resources, Inc.
> 2358 Perimeter Park Drive, Suite 370
> Atlanta, GA 30341
> Facsimile: 770/457-5006
> Attn: Marcia Thiel

Any notice provided by facsimile received after 4:00 p.m. local time shall be deemed received the following business day. A party may change its addresses for notice on not less than ten (10) business days prior written notice to the other party.

9. NCO may transfer its rights under this agreement to any successor who acquires substantially all the assets and businesses of NCO or to any subsidiary, affiliated or parent company.

10. VRI will assist NCO in meeting its audit and regulatory requirements, if determined by NCO to be necessary, by providing copies of NCO invoices and/or reports, and/or Billing Summaries processed and/or conducted by VRI at the request of NCO based on this agreement. In addition, VRI' s representative will be available to personally meet, at a time and place agreeable to all attending parties, with auditors and examiners to explain or verify compliance with this Agreement.

If any audit or examination reveals that VRI' s invoices for the audited period are not correct for such period, VRI shall promptly reimburse NCO for the amount of any overcharges, or NCO shall promptly pay VRI for the amount of any undercharges.

11. This Agreement may be terminated by either party at any time for any reason upon thirty (30) days prior written notice to the other party. No termination shall affect either party's rights and responsibilities under Parts 5 and 6 of this Agreement.

12. Nothing in this Agreement is intended or shall be construed to create or establish an agency, partnership, or joint venture relationship between the parties.

13. No waiver by either party of any provision or any breach of this Agreement constitutes a waiver of any other provision or breach of this Agreement and no waiver shall be effective unless made in writing. The right of either party to require strict performance and observance of any obligations hereunder shall not be affected in any way be any previous waiver, forbearance or course of dealing.

14. Neither party will be deemed in default of this Agreement as a result of a delay in performance or failure to perform its obligations caused by acts of God or governmental authority, strikes or labor disputes, fire, acts of war, failure of third party suppliers, or for any other cause beyond the control of that party.

15. VRI shall not sell, assign, license, sub-license, franchise or otherwise convey in whole or in part to any third party this Agreement or the services provided hereunder without the prior written consent of NCO excluding subcontractors hired by VRI to obtain certain information which may need to be included in NCO reports.

16. This is a non-exclusive agreement. Similar agreements may be entered into by either party with any other person.

17. This Agreement shall be governed by, construed, interpreted and enforced according to the laws of the State of Georgia and of the United States of America, without regard to principles of conflict of laws and rules. Each party hereby consents to the non-exclusive jurisdiction of the courts of the State of Georgia and United States Federal Courts located in Georgia to resolve any dispute arising out of this Agreement.

18. Each party shall not make any use of the other party's NCO, logo, trademarks or service marks, without the prior written consent of the party. Any and all advertising materials of any nature whatsoever or any and all statements whether oral or written, expressed or implied, regarding any product or services offered by NCO which in any manner concern or refer to such name, logos, trademarks or service marks including, but not limited to, " NCO," will first be provided to NCO in writing and are subject to NCO's prior written consent. Either party may disclose to the public the general nature of this Agreement.

19. In the event that any material provision of this Agreement is determined to be invalid, unenforceable or illegal, then such provision shall be deemed to be superseded and the Agreement modified with a provision which most nearly corresponds to the intent of the parties and is valid, enforceable and legal.

20. This Agreement constitutes the final and complete understanding and agreement between the parties concerning the subject matter hereof. Any prior agreements, understanding negotiations or communications written or otherwise are deemed superseded by this Agreement. This agreement may be modified only by further written agreement executed by an authorized representative of the parties hereto.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by their respective duly authorized representatives.

**VERICON RESOURCES, INC.**

By: _Marcia q Shiel_

Title: _President_

Print Name: _MARCIA THIEL_

Date: _5/10/07_


**NCO**

By: _[signature]_

Print Title: _Sr.V.P. Human Resources_

Print Name: _Cherie A Sugg PHR_

Date: _5/7/07_

**EXHIBIT C**

# Addendum to Agreement for Services

NCO Employment Eligibility Program

This addendum effective, May ⅂__, 2007 is between NCO, headquartered in Horsham, PA, and Vericon Resources, Inc., headquartered in Atlanta, GA.

Whereas, NCO has appointed Vericon Resources as its third party coordinator to administer NCO's Employee Eligibility Program.

Whereas, NCO agrees and acknowledges that Vericon is applying hiring parameters in accordance to NCO's hiring policies with regards to pre-employment background checks. NCO agrees and acknowledges that said parameters are owned solely by NCO in determining employment eligibility. NCO agrees that Vericon is absolved from any culpability resulting from the administration of the Employee Eligibility Program, unless the culpability is caused by Vericon's negligence or willful misconduct.

The administration of said program will include notifying NCO field personnel and corporate Human Resource personnel of an individual's eligibility for hire. Vericon is responsible for contacting applicants when information clarification is required, and dissimulating Adverse Action notices as directed by NCO.

Vericon will invoice NCO a flat retainer fee of $3,500.00 per month, plus fees associated with mailing Adverse Action notices ($1.50 per notice).

NCO agrees to supply Vericon with soft copy of appropriate logo letterhead and envelopes.

NCO
Signed _____   Date 5|7|07

Vericon Resources, Inc.
Signed _____   Date 5|10|07