UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ALISIA DAILY,
    and others similarly situated

        Plaintiffs,

                              Civil Action No.: 3:09-CV-031

v.

NCO FINANCIAL SYSTEMS, INC.

And

NCO CUSTOMER MANAGEMENT, INC.

And

NCO GROUP, INC.,

        Defendants.

_____/

## CLASS ACTION SETTLEMENT AGREEMENT

    This Class Action Settlement Agreement (hereinafter referred to as the "Agreement"), dated February 1, 2011, is entered into between Alisia Daily (hereinafter referred to as "Plaintiff" or "Class Representative"), individually and on behalf of the "Class Members" (as defined below), and defendants, NCO Financial Systems, Inc., NCO Customer Management, Inc., and NCO Group, Inc. (hereinafter collectively referred to as "NCO"). This Agreement is intended by NCO and Plaintiff, on behalf of herself and the Class Members (hereinafter collectively referred to as the "Parties"), to fully, finally, and forever resolve, discharge, and settle the "Released Claims" (as defined

1

below) in favor of the "Released Parties" (as defined below), upon and subject to the terms and conditions contained herein.

WITNESSETH:

WHEREAS, the Parties agree upon the following predicate procedural history and facts:

1.   On January 14, 2009, Plaintiff filed a class action complaint (hereinafter referred to as the "Lawsuit") against NCO, which was amended on April 7, 2009, asserting class claims under the Fair Credit Reporting Act (hereinafter referred to as the "FCRA"), 15 U.S.C. § 1681, *et seq.*  NCO denies all liability asserted in the Lawsuit.

2.   In an attempt to settle the Lawsuit, the Parties participated in extensive settlement discussions and mediated the case in person on February 24, 2010 and on an ongoing basis thereafter, before Magistrate Judge Dennis W. Dohnal.  After the mediation, the Parties reached a settlement in principle, with the detailed terms of the settlement to be further negotiated and agreed upon by the Parties.  The purpose of this Agreement is to memorialize the final and complete settlement reached between the Parties.

3.   The Parties believe that settlement by way of this Agreement is in her/their best interests.  Counsel for the Class Members believe, in view of the costs, risks, and delays of continued litigation and appeals balanced against the benefits of settlement to the Class Members, that the class settlement as provided in this Agreement is in the best interest of the Class Members and is a fair, reasonable, and adequate resolution of the Lawsuit.

4.   Pursuant to this Agreement, the Parties desire and intend to settle and resolve the "Released Claims" (as defined below) as to the "Released Parties" (as defined below) on a class basis.

5.   Pursuant to this Agreement, the Parties desire and intend to seek certification of a Fed. R. Civ. P. 23 (b)(3) settlement class, composed of 2 Subclasses.  Subclass 1 is composed of all United States residents who applied for employment with NCO, or were employed with NCO, and were the subject of a background check where a "consumer report" as defined by the FCRA was obtained between January 14, 2007 and January 14, 2009.  Subclass 2 is composed of all Subclass 1 Members who received a letter stating that his or her application process or employment may be discontinued due to negative information revealed in the background check.   NCO represents that there are approximately 38,040 Subclass 1 Members and approximately 3,027 Subclass 2 Members.

2

6.     The Class Members shall receive written notice of the settlement. The Subclass 2 Members shall also receive a settlement payment. The Subclass 1 Members shall be entitled to receive a settlement payment upon timely submission of a completed "Claim Form" (as defined below).

7.     The Parties desire and intend to seek Court approval of the settlement of the Lawsuit as set forth in this Agreement and, upon Court approval, to seek a Final Order and Judgment from the Court dismissing with prejudice the claims of the Class Members as set forth herein. The Parties and their counsel agree to recommend approval of this Agreement to the Court and to any regulatory authority responding to the proposed settlement per the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4. The Parties also agree to undertake all steps necessary to effectuate the terms and purposes of this Agreement, to secure the Court's approval of same, to oppose any objections to the proposed settlement, including objections by any regulatory authority after CAFA notices are issued, and to oppose any appeals from any orders of final approval. NCO will be responsible to issue the appropriate CAFA notices.

WHEREFORE, in consideration of the promises, representations, and warranties set forth, the Parties stipulate and agree:

1.     <u>DEFINITIONS</u> – The following definitions shall apply to this Agreement:

A.     "Class Members" shall mean all members of Subclass 1 and Subclass 2.

1.     "Subclass 1 Members" are all United States residents who applied for employment with NCO, or were employed with NCO, and were the subject of a background check where a "consumer report" as defined by the FCRA was obtained between January 14, 2007 and January 14, 2009. NCO represents that there are approximately 38,040 Subclass 1 Members.

2.     "Subclass 2 Members" are all Subclass 1 Members who received a letter stating that his or her application process or employment may be discontinued due to negative information revealed in the background check. NCO represents that there are approximately 3,027 Subclass 2 Members.

3

B.    "Effective Date" shall mean the first date after "Final Judgment Day" (as defined below) and after NCO fulfills the obligations required under ¶ 23 of this Agreement.

C.    "Final Judgment Day" shall mean the day upon which the Final Order and Judgment becomes "Final." The Final Order and Judgment shall become "Final" upon the expiration of any available appeal period following entry of the Final Order and Judgment. If any appeal is filed from the Final Order and Judgment, then Final Judgment Day shall be the first date after the conclusion of all appeals, so long as the Final Order and Judgment is not reversed or vacated.

D.    "Released Claims" shall mean any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law (including the FCRA), state law, common law, territorial law, or foreign law right of action or of any other type or form (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), and also including all "Unknown Claims" (as defined below) which Plaintiff or a Class Member has arising out of the class claims asserted in the Lawsuit, including, but not limited to, the claims that NCO failed to provide the proper FCRA disclosures during its background check process.

E.    "Unknown Claims" shall mean any and all claims which arise out of the Released Claims and that Plaintiff or any Class Member does not know or suspect to

4

exist against any of the Released Parties, which, if known, might have affected his or her decision regarding the settlement of this Lawsuit. Plaintiff further acknowledges, and the Class Members shall be deemed to acknowledge, that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of this release, but nevertheless fully, finally, and forever settle and release any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, may hereafter exist, or heretofore have existed based upon actions or conduct occurring on or before the date of this Agreement, without regard to subsequent discovery or existence of such different or additional facts concerning each of the Released Parties. Notwithstanding this provision, the Parties do not intend to release any claims not arising from the class claims.

F.   "Released Parties" shall mean NCO and each of its past, present, and future directors, officers, employees, partners, principals, agents, underwriters, insurers, co-insurers, re-insurers, shareholders, attorneys, and any related or affiliated company, including any parent, subsidiary, predecessor, or successor company, and all assigns, licensees, divisions, clients, joint ventures, including NCO Financial Systems, Inc., NCO Customer Management, Inc., and NCO Group, Inc., and all of their subsidiary entities, and any other related NCO entity.

2.   CLASS CERTIFICATION – Concurrent with seeking preliminary approval of the settlement, counsel for the Parties shall jointly seek certification, per FED. R. CIV. P. 23 (b)(3), of a class composed of the 2 subclasses defined above in ¶ 1(A).

3.     CLASS REPRESENTATIVE AND CLASS COUNSEL APPOINTMENT – For settlement purposes, and subject to Court approval, Plaintiff, Alisia Daily, is appointed as the Class Representative for the Class Members and Mr. Leonard A. Bennett and Mr. Christopher Colt North are appointed as counsel for the Class Members (hereinafter referred to as "Class Counsel").

4.     ORDER OF PRELIMINARY APPROVAL – Within 30 business days after this Agreement is fully executed, counsel for the Parties shall jointly request that the Court enter an Order of Preliminary Approval of Class Action Settlement in substantially the same form attached as **Exhibit A**.

5.     FINAL ORDER AND JUDGMENT – If the settlement is approved preliminarily by the Court, and all other conditions precedent to the settlement have been satisfied, counsel for the Parties shall jointly request that the Court enter a Final Order and Judgment in substantially the same form attached as **Exhibit B**.

6.     Upon entry of the Final Order and Judgment, the Parties expressly waive any and all rights to appeal any orders issued by the Court in connection with the Lawsuit.

7.     Plaintiff and Class Counsel agree that the execution of this Agreement, or any related documents, the certification of the class, and any other act taken or court paper filed in furtherance of this Agreement shall not be used to urge that a "litigation class" pursuant to FED. R. CIV. P. 23 is appropriate in this case.  In the event this settlement is not approved, NCO retains any and all rights to object to the maintenance of this action, or any other action, as a class action and to contest this action, or any other action, on any

6

other grounds.  Similarly, in the event this settlement is not approved, Plaintiff retains all

rights to continue to prosecute her class action.

8.      ADMINISTRATION AND NOTIFICATION PROCESS – Class Counsel will

hire a mutually agreed upon third party administrator (the TPA) to oversee the

administration of the settlement and the notification to Class Members.  NCO shall be

responsible for all costs and expense for the TPA.  The TPA will be responsible for

mailing the approved class action notices and claim forms to the Class Members.  A

separate checking account (hereafter "the Settlement Account") will be established by the

TPA for purposes of depositing the settlement funds for the sole purpose of issuing

settlement checks.  NCO shall deposit $1,746,000 into this account no later than 15 days

after Final Judgment Day, which will be allocated as follows:  $743,850 in a Settlement

Fund for Subclass 1 Members that submit a Claim Form within the delays allowed;

$522,000 for settlement payments made to Subclass 2 Members; and, $480,150 for Class

Counsel fees and related costs, which are subject to Court approval and represent 27.5%

of the total net settlement fund, excluding costs of administration and notice.   The

settlement checks shall issue from the Settlement Account only and the TPA will verify

that the settlement checks were mailed.

9.      Class Counsel, through the TPA, as expeditiously as possible but not to exceed 20

days from the Court's entry of the Order of Preliminary Approval of Class Action

Settlement, provide notice of the settlement to the Class Members as follows:

        A.      Written Notice – Before sending the written notices required by this

subparagraph, NCO using its standard practices to research and update consumer addresses, shall update the Class Members' addresses. NCO will produce the last known address for the Class Members through this address updating process. After completing the address updating process, the TPA shall send via First Class U.S. mail the Court approved written notice of the settlement to each Class Member at his or her last known valid address, as identified in NCO's updated business records, address correction requested. If any notice is returned with a new address, the notice will be re-mailed by the TPA to the new address. The notice to Subclass 1 Members shall be in substantially the form attached as **Exhibit C**. The notice to Subclass 2 Members will be in substantially the form attached as **Exhibit D**. As further described in ¶ 23 below, the TPA shall send the appropriate notice to each Class Member. The TPA shall send the approved claim form for Subclass 1 Members for participation in the Subclass 1 class action disbursement (hereinafter referred to as the "Claim Form"). The Claim Form for the Subclass 1 Members shall be in substantially the form attached as **Exhibit E**.

B.   <u>Internet Notice and Claims</u>. The TPA shall be responsible for maintaining a toll-free number and an Internet website at domain <u>www.NCOFCRASettlement.com</u>., or some domain name that is similar. The website operated by the TPA will: (1) enable Settlement Class Members to access and download the Class Notice and other pertinent documents; (2) enable Settlement Class Members to download an opt-out form, (3) enable Subclass 1 class members to submit their claim online; (4) provide a list of critical

dates and deadlines in the settlement process; and (4) provide relevant updates and information with respect to the settlement and approval process.

B.      Under no circumstances shall Class Counsel or Plaintiff be responsible for any of the costs of administration or notice, including without limitation the costs associated with printing, mailing, or processing any of the notices or Claim Forms required by this Agreement.

10.   REQUESTS FOR EXCLUSION AND OBJECTIONS – The TPA shall administer the receipt of any and all requests for exclusion and objections.

11.   Any Class Member who desires to be excluded from the class must send a written request for exclusion to the TPA with a postmark date no later than 50 days after the Court's entry of the Order of Preliminary Approval of Class Action Settlement. The TPA shall provide a list of the names of each Class Member who submitted a timely exclusion to counsel for NCO and Class Counsel after the deadline passes. A copy of this list will be filed with the Court, along with the Parties' Motion for Final Approval of Class Action Settlement.

12.   In the written request for exclusion, the Class Member must set forth his or her full name, address, and telephone number, along with a statement that he or she wishes to be excluded.

13.   Any Class Member who submits a valid and timely request for exclusion shall not be bound by the terms of this Agreement.

14.     Any Class Member who intends to object to the fairness of this settlement must file a written objection with the Court within 50 days from the Court's entry of the Order of Preliminary Approval of Class Action Settlement.   Further, any such Class Member must, within the same time period, provide a copy of the written objection to Class Counsel and counsel for NCO.   Notwithstanding this deadline, objections to attorneys' fees and costs to be awarded may be filed at any time before the final Fairness Hearing.

15.     In the written objection, the Class Member must state:  his or her full name, address, and telephone number; the reasons for his or her objection; and, whether he or she intends to appear at the fairness hearing on his or her own behalf or through counsel. Further, the Class Member must attach to his or her objection any documents supporting the objection.

16.     Any Class Member who does not file a valid and timely objection to the settlement shall be barred from seeking review of the settlement by appeal or otherwise.

17.     When responding to any inquiry from a Class Member, Plaintiff and Class Counsel will confirm that they believe the settlement is fair and reasonable.

18.     Subject to approval by the Court, a fairness hearing will be conducted regarding the settlement within 120 days from the Court's entry of the Order of Preliminary Approval of Class Action Settlement.

19.     THE EFFECTIVE DATE – As defined in ¶ 1(B), the "Effective Date" shall be the first date after Final Judgment Day and after NCO completes the performance requirements under ¶ 23 of this Agreement.

10

20.   RELEASES – As of the Effective Date, Plaintiff and the Class Members fully, finally, and forever settle, release, and discharge the Released Parties from the Released Claims, and are forever barred from asserting any of the Released Claims in any court or forum whatsoever against any of the Released Parties.

21.   Upon execution of this Agreement, Plaintiff fully, finally, and forever settles, releases, and discharges the Released Parties from any remaining claims that she may have against the Released Parties.   Further, upon execution of this Agreement, the Released Parties fully, finally, and forever settle, release, and discharge Plaintiff and her attorneys, including Mr. Leonard A. Bennett and Mr. Christopher Colt North, from any and all claims or causes of action they may have against any of them as of the date hereof.

22.   The provisions of any state, federal, municipal, local, or territorial law or statute providing in substance that releases shall not extend to claims, demands, injuries, or damages that are unknown or unsuspected to exist at the time a settlement agreement is executed and approved by a court are hereby expressly, knowingly, and voluntarily waived by Plaintiff and the Class Members.

23.   SETTLEMENT CONSIDERATION – In consideration for the foregoing releases, the Parties agree to the following:

A.   Settlement Funds – NCO will provide a total net settlement payment of $1,746,000 (inclusive of all attorney's fees, settlement payments and if appropriate a *cy*

11

*pres* award, but not including costs of notice and administration) to the TPA for distribution as follows:

     1.   <u>Subclass 1</u> – Provided the Court approves Class Counsel's fee application, which will not be objected to by NCO, the TPA will allocate $743,850 into a settlement fund ("Settlement Fund") for payments to Subclass 1 Members who do not exclude themselves and submit a completed Claim Form to the TPA with a postmark date no later than 50 days after the Court's entry of the Order of Preliminary Approval Class Action Settlement.

     2.   <u>Subclass 2</u> – Provided the Court approves Class Counsel's fee application, which will not be objected to by NCO, the TPA will allocate $522,000 for settlement payments to Subclass 2 Members who do not exclude themselves from the settlement.

     B.   <u>Settlement Payments</u> – After completing the address updating process required by ¶ 9(A), the TPA shall send via U.S. mail, address correction requested, the appropriate settlement notice to each Subclass Member at his or her last known valid address. The appropriate Claim Form shall also be mailed along with the notice of class action settlement required by ¶ 9(A) to Subclass 1 Members. The payments to Class Members contemplated herein shall not become the property of the Class Member until the payment check is cashed.

     1.   <u>Subclass 1 Members</u> – Each Subclass 1 Member who does not exclude himself or herself from the class and whose completed Claim Form is returned to

the TPA with a postmark date no later than 50 days after the Court's entry of the Order of Preliminary Approval of Class Action Settlement shall be entitled to participate in the settlement as follows:

        a.     <u>Settlement Payment to Subclass 1 Members</u> – The TPA will mail via U. S. first class mail a settlement check of up to $180 to each Subclass 1 Member who does not exclude himself or herself from the class and whose completed Claim Form is received by the TPA, with a postmark date of no later than 50 days after the Court's entry of the Order of Preliminary Approval of Class Action Settlement. For example, and assuming a 15% claim-in rate, each such Subclass 1 Member will receive a check for approximately $130.36. No later than 75 days after the Court's entry of the Order of Preliminary Approval of Class Action Settlement, The TPA shall provide to Class Counsel and NCO a list of all individuals who have submitted a Claim Form.

        2.     <u>Subclass 2 Members</u> – Each Subclass 2 Member who does not exclude himself or herself from the class shall be entitled to participate in the settlement as follows:

        a.     <u>Settlement Payment to Subclass 2 Members</u> – The TPA will distribute a *pro rata* share of the amount provided at ¶ 23(A)(2) to each Subclass 2 member by settlement check to each Subclass 2 Member who does not exclude himself or herself from the class.

        C.     The settlement checks shall be sent by the TPA via U.S. first class mail no earlier than 7 days after Final Judgment Day and no later than 30 days after Final

Judgment Day.  If the Class Member is to receive a settlement check, NCO's obligations per this paragraph will be considered fulfilled upon the mailing of the settlement check, regardless of whether the settlement check is received, returned, or cashed.  Each settlement check will be negotiable for 60 days after it is mailed.  Any funds from returned or uncashed settlement checks shall become part of the Class Settlement Fund.

D.    <u>Administrative Costs</u> – The Parties agree that NCO will pay the costs associated with administering the settlement.  To the extent there are funds remaining in the Class Settlement Fund after the claim-in process, those funds will first be used to pay for NCO's administration and notice costs up to $100,000.  Under no circumstances shall Class Counsel or Plaintiff be responsible for any of the costs associated with administering the settlement.

E.    <u>*Cy Pres* Award</u> – The Parties agree that NCO will contribute $1,746,000 for the combined cash settlement payments, attorney's fees, and *cy pres*.  To the extent there are funds remaining in the Class Settlement Fund after the claim-in process, those funds will first be used to pay for NCO's administration and notice costs up to $100,000.  Any remaining funds will be donated to a *cy pres* recipient, which will be chosen by Class Counsel, subject to reasonable rejection by NCO and subject to Court approval.  The Parties agree the *cy pres* recipient cannot be anyone who sues debt collectors, or provides advice on suing debt collectors.  Any disputes will be decided by Magistrate Judge Dohnal.

14

24.   <u>COVENANT NOT TO SUE</u> – Plaintiff agrees and covenants, and each Class Member will be deemed to have agreed and covenanted, not to sue any Released Party with respect to any of the Released Claims, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any court of law or equity, or any other forum.

25.   <u>TERMINATION</u> – After completing a good faith negotiation, Class Counsel and NCO shall each have the right to terminate this Agreement by providing written notice to the other within 7 days following:

A.   The Court's refusal to enter an Order of Preliminary Approval of Class Action Settlement in substantially the form attached as **Exhibit A**;

B.   The Court's refusal to approve the settlement following notice to the Class Members and the fairness hearing; or

C.   The Court's refusal to enter a Final Order and Judgment in substantially the form attached as **Exhibit B**.

26.   If either Class Counsel or NCO terminates this Agreement as provided herein, the Agreement shall be of no force and effect and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if this Agreement had ever been executed.

27.   <u>ATTORNEYS' FEES, COSTS, AND EXPENSES</u> – Class Counsel shall file an application for attorneys' fees, costs, and expenses in an amount not to exceed $480,150,

which constitutes 27.5% of the total net settlement fund, excluding costs of administration and notice. NCO will not object to the fee, cost, and expense application.

28.     The TPA shall forward to Class counsel the check(s) for the attorneys' fees, costs, and expenses awarded by the Court when it possesses cash funds to do so, but in any event no sooner than 15 days nor later than 30 days after the Court's order related to such fees, costs, and expenses becomes final (non-appealable).   Upon payment of the attorneys' fees and related costs to Class Counsel, NCO shall not have any further obligation with respect to Class Counsel's fees, costs, and expenses, or the fees, costs, or expenses of any other attorney on behalf of Plaintiff or any Class Member.

29.     The Parties and their counsel represent and agree that the consideration to be provided to the Class Members is not contingent on the attorneys' fees to be awarded. The procedure for and the allowance or disallowance by the Court of any application by any Class Counsel member or other attorney for attorneys' fees, costs, or expenses, including the fees of experts and consultants, to be paid by NCO or its insurer, are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceedings relating to the fee, cost, and expense application, or any appeal from any order relating thereto, or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Order and Judgment approving this Agreement and the settlement of the Lawsuit.

16

30.   MISCELLANEOUS PROVISIONS – Any exhibits to this Agreement are an integral part of the settlement and are expressly incorporated herein as part of this Agreement.

31.   This Agreement is for settlement purposes only.  The Parties acknowledge that this Agreement is not an admission of wrongdoing, negligence, or liability by NCO.  This Agreement shall not be offered or be admissible against NCO, or cited or referred to, in any action or proceeding, except in an action or proceeding brought to enforce its terms.

32.   No representations, warranties, or inducements have been made to any of the Parties, other than those representations, warranties, and covenants contained in this Agreement.

33.   This Agreement contains the entire agreement between the Parties and supersedes any and all other agreements between the Parties, including any and all other mediation and settlement agreements.  The terms of this Agreement are contractual.

34.   This Agreement shall be interpreted in accordance with Virginia law.

35.   Any dispute, challenge, or question relating to this Agreement shall be heard only by this Court.

36.   The Parties shall request that the Court retain continuing and exclusive jurisdiction over the Parties to this Agreement, including the Plaintiff and all Class Members, and over the administration and enforcement of this Agreement.

37.   This Agreement shall be binding upon and inure to the benefit of the Parties and their representatives, heirs, successors, and assigns.

17

38.    In the event that any of the provisions of this Agreement are held invalid or unenforceable for any reason, such invalidity or unenforceability shall not affect other provisions of this Agreement if NCO and Class Counsel mutually elect to proceed as if the invalid or unenforceable provision had never been included in the Agreement.

39.    This Agreement shall be deemed to have been drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any party because such provision, or this Agreement as a whole, was purportedly prepared or requested by such party.

40.    This Agreement may be signed in counterparts and the separate signature pages executed by the Parties and their counsel may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have caused

this Agreement to be executed this ___ day of February, 2011.


                                        NCO Financial Systems, Inc.,
                                        NCO Customer Management, Inc. and
                                        NCO Group, Inc.


_____         By: _____
Alisia Daily                                  Joshua Gindin, General Counsel- NCO
Plaintiff


_____         _____
Leonard A. Bennett, Esq.                David Israel, Esq.
CONSUMER LITIGATION ASSOCIATES, P.C.    Allison L. Cannizaro, Esq.
12515 Warwick Blvd., Suite 100          SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
Newport News, Virginia 23606            3850 North Causeway Blvd., Suite 200
Telephone: (757) 930-3660               Metairie, LA 70002
Facsimile: (757) 930-3662               Telephone: (504) 828-3700
                                        Facsimile: (504) 828-3737
Christopher Colt North, Esq.
THE CONSUMER & EMPLOYEE RIGHTS
LAW FIRM, P.C.
751-A Thimble Shoals Blvd.              William Bayliss, Esq.
Newport News, VA 23606                  WILLIAMS, MULLEN, CLARK & DOBBINS
Telephone: (757) 873-1010               2 James Center
Facsimile:  (757) 873-8375              1021 East Cary Street
                                        Richmond, VA 23219
                                        Telephone: (804) 643-1991
Attorneys for Plaintiff,                Facsimile:  (804) 783-6507
Alisia Daily

                                        Attorneys for Defendants,
                                        NCO Financial Systems, Inc.,
                                        NCO Customer Management, Inc. and
                                        NCO Group, Inc.