**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**


**ALISIA DAILY,**
**and others similarly situated**

       **Plaintiffs,**


**v.**                               **Civil Action No.: 3:09-CV-031**


**NCO FINANCIAL SYSTEMS, INC.**
**and**
**NCO CUSTOMER MANAGEMENT, INC.**
**and**
**NCO GROUP, INC.,**

       **Defendants.**


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**HER MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT,**
**AND AN AWARD OF INCENTIVE PAYMENT, ATTORNEYS FEES AND**
**REIMBURSEMENT OF EXPENSES**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION…………………………………………………………..………………1

II.  ARGUMENT……………………………………………………………………….. 5

A.   The Proposed Settlement is Fair, Reasonable, and Adequate and Should
     Be Approved. …………………………………………………………………………5

     1.   The Standard for Judicial Approval of Class Action Settlements…………......5

     2.   The Notice Provided to the Class Members was Reasonable………………......8

     3.   An Analysis of the *Jiffy Lube* Factors Demonstrates that the
          Settlement is Fair and Reasonable…………………………….……………10

     4.   An Analysis of the *Jiffy Lube* Factors Demonstrates that
          the Settlement is Adequate………………………………………………......13

B.   The Court should Approve the Request for an Award of Incentive Payment,
     Attorneys Fees and Reimbursement of Expenses…………………………………......16

     1.   The Court should Award Incentive Payment
          to the Class Representative……………………………………………………16

     2.   The Court should Award Attorneys' Fees Using the
          Percentage of Fund Method……………………………………………...…17

III. CONCLUSION……………………………………………………………………......21

## TABLE OF AUTHORITIES

### *STATUTES*

§1681b(b)(3)(A) .................................................................................................. 2

15 U.S.C. § 1681n ............................................................................................. 14

15 U.S.C. §1681, *et seq.* ..................................................................................... 1

15 U.S.C. §1681(n) .............................................................................................. 2

15 U.S.C. §1681n ................................................................................................ 2

1681b(b)(3)(A) .................................................................................................... 2

28 U.S.C. §1715 ................................................................................................ 10

### *RULES*

Fed. R. Civ. P. 23 ...............................................................................................passim

Federal Judicial Center, *Manual for Complex Litigation§21.312 (4th 2004)* ...........8

 Federal Judicial Center, *Manual for Complex Litigation§24.121* ..........................17

### *CASES*

*Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540, 547 (D.Colo. 1989) .................. 15

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 ................................................. 6

*Beverly v. Wal-Mart Stores, Inc.*, No. 3:07CV469, 2008 WL 149032 ...................... 2, 12, 16, 20

*Blum v. Stenson,* 465 U.S. 886, 900 n. 16 ........................................................... 17

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 478-79 ................................................ 17

*Browning v. Yahoo! Inc.*, 2006 WL 3826714 ...................................................... 10

*Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 ................................... 17

*Capetta v. GC Servs. LP*, No. 3:08CV288-JRS .................................................... 16

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.,* No. 85CV4038,  1987 WL 7030, at *2 (S.D.N.Y. Feb. 13, 1987) ................................................................................... 14

*Choicke v. Slippery Rock Univ.*, 2007 WL 2317323 ............................................. 10

*Clark v. Experian Info. Sols.,* No. 8:00cv1217-22, 2004 WL 256433 ......................... 20

*Cook v. Niedert*, 142 F.3d 1004, 1016 ................................................................ 17

*DeLoach v. Philip Morris Cos.*, No. 00-1235, 2003 WL 23094907 .......................................... 18

*Farinella v. Paypal, Inc.*, 2009 WL 1211912 ............................................................... 10

*Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 ..................................................... 9

*Flinn v. F.M.C. Corp*, 528 F.2d 1169, 1172-73 ........................................................ 7, 16

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 .................................................... 17

*Gottlieb v. Barry*, 43 F.3d 474, 487 ..................................................................... 17

*Gwozdzinnsky v. Sandler Assoc.*, No. 97-7314, 1998 WL 50368, 159 F.3d 1346 ...................... 19

*Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 .......................................................... 7

*In re Bancorp Litig.*, 291 F.3d 1035, 1038 .............................................................. 17

*In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499 ........................................ 19

*In re Combustion, Inc.*, 968 F. Supp. 1116, 1136 ....................................................... 18

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 .............. 18

*In re Educ. Testing Serv.*, 447 F. Supp. 2d 612, 631 ................................................... 19

*In re GMC*, 55 F.3d 768, 821-22 ......................................................................... 17

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158, 159 ......................................... 7, 11, 13

*In re Microstrategy,* 148 F.Supp.2d at 663, 664, 667, 668 .................................. 7,11, 12, 15, 16

*In Re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d at 788 ......................................... 18

*In re Mid-Atlantic Toyota Antitrust Litig.,* 564 F.Supp. 1379, 1383 ................................... 11

*In re Serzone*, 231 F.R.D. 221, 236 ..................................................................... 9

*In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.,* 56 F.3d 295
............................................................................................................ 17, 18

*In re US Bancorp Litig.*, 291 F.3d 1035, 1038 ......................................................... 18

*In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 995 ..................................................... 19

*Kidrick v. ABC Television & Appliance Rental*, No. 3:97CV69, 1999 WL 1027050 .................. 19

*Makson v. Portfolio Recovery Assoc., Inc.,* No. 3:07CV982-HEH ........................................ 16

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 ........................................... 19

*Martin v. United Auto Credit Corp.*, 3:05cv00143 ...................................................... 10

*Owner-Operator Ind. Driver Ass'n. Inc. v. USIS Commercial Servs., Inc.,* 2006 WL 2164661 .... 2

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 ................................................... 9

*Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 515-16 ................................................ 17

*S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. at 339 ...................................................... 7

*S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 .................................................. 5

*Sala v. Nat'l R.R. Passenger Corp.,* 721 F. Supp. 80, 83 (E.D. Pa. 1989) .................................. 16

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029............. 7

*Shaw v. Toshiba Am. Info. Sys., Inc.* 91 F. Supp. 2d 942, 943...................................... 17

*Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, ...................... 18

*South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339...................................... 11

*Soutter v. Equifax Info. Services, LLC*, 3:10CV107, 2011 WL 1226025 ................................... 12

*Sprague v. Ticonic Nat'l* Bank, 307 U.S. 161, 165-67 ................................................ 17

*Staton v. Boeing Co.*, 327 F.3d 938, 976-77 ............................................................ 17

*Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501, 502 ........................... 7, 11,13,18

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 ...................... 19

*Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 ................................................. 17

*Todd v. Retail Concepts, Inc.*, 2008 WL 3981593 ........................................................ 10

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 .................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 ...................................... 13

*Weiss v. Regal Collections*, Civ. No. 01CV881-DMC, 2006 WL 2038493 ................................ 13

*West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710, 740 (D.W.V. 1970)) ............................. 15

*Williams v. LexisNexis Risk Mgmt., Inc.,* No. 3:06CV241, 2007 WL 2439463 ................. 2, 16, 20

Plaintiff Alisia Daily, on behalf of herself and the Class, respectfully submits this memorandum in support of final approval of the class settlement reached in this case. With the approval of the Plaintiff, class counsel herein also petition the Court for an award of attorneys' fees and for reimbursement of their out of pocket expenses incurred in furtherance of litigating this matter to the successful result now before this Court for final approval.

## I.   INTRODUCTION

On January 14, 2009, Plaintiff filed this action on behalf of consumers residing in the United States who were the subject of a consumer report which was used by the Defendants to make an employment decision – whether to hire, fire or promote the consumer.[1]  The lawsuit alleges that Defendants violated certain provisions of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA").   Plaintiff claimed that NCO obtained and used employment background checks without compliance with the FCRA's rigorous prerequisites for employment-purposed reports.  Specifically, the Plaintiff alleges for a that Defendants violated FCRA Section 1681b(b)(2)(A) by procuring a consumer report or causing a consumer report to be procured for employment purposes without first (i) providing them with a clear and conspicuous disclosure in writing in a document that consisted solely of the disclosure that such a consumer report would be obtained for employment purposes; and (ii) obtaining the consumers' proper written authorization to procure such consumer reports.  The class period applicable to the Civil Action's claims under FCRA Section 1681b(b)(2)(A) is from January 14, 2007 to January 14, 2009. ("Subclass 1").

In addition, the lawsuit alleges that, as to a 3027-member subclass of consumers against whom the Defendants took an adverse action based in whole or in part on the consumer report

---

[1] NCO is engaged in two primary lines of business – debt collection and call center outsource services for other businesses such as Best Buy. http://www.ncogroup.com/ last viewed on May 5, 2011.

during the time period January 14, 2007 and January 14, 2009, Defendants violated (i) FCRA Section 1681b(b)(3)(A) by not providing the consumers with a copy of their report and a description in writing of their FCRA rights at least five business days before commencing the adverse action decision process. *See Beverly v. Wal-Mart Stores, Inc.*, No. 3:07CV469, 2008 WL 149032 (E.D. Va. Jan. 11, 2008) (explaining that "'Simultaneous provision' of a consumer report with a notice of adverse action fails to satisfy the §1681b(b)(3)(A) requirement. Accordingly, the Court finds that a reasonable jury could find that defendant violated §1681b(b)(3)(A) when it took adverse action before it provided plaintiff with a copy of his consumer report. Therefore, defendant is not entitled to summary judgment as a matter of law.")(internal citation omitted).

The lawsuit did not seek to recover actual damages, instead alleging a "willful" violation of the FCRA, which could have entitled Plaintiffs to statutory and punitive damages.  15 U.S.C. §1681n; *see Beverly*, 2008 WL 149032, at n.2 (finding punitive damages are available "plaintiff proceeds only under 15 U.S.C. §1681(n), pursuant to which '[A] plaintiff who has proven that the defendant willfully failed to comply with the FCRA may recover statutory and punitive damages without proof of actual damages.' *Williams v. LexisNexis Risk Mgmt., Inc.,* No. 3:06CV241, 2007 WL 2439463 (E.D.Va. Aug. 23, 2007) (quoting *Owner-Operator Ind. Driver Ass'n. Inc. v. USIS Commercial Servs., Inc.,* 2006 WL 2164661, at *2 (D.Colo. July 31, 2006). Defendant concedes that statutory damages may be available for a willful violation.").

Soon after filing the Complaint, the parties commenced discovery by immediately and voluntarily exchanging information and documents.  Counsel were familiar with one another from previous litigation and are often opposite one another in consumer credit cases.  The parties engaged in formal mediation under the supervision of Magistrate Judge Dohnal.  They negotiated

over multiple sessions – commencing with in-person mediation and followed by both joint and ex parte communications through and with Judge Dohnal – before reaching a tentative settlement. Additional terms – notice, costs and attorneys fees – then also had to be negotiated and agreed. Ultimately, the settlement was finalized and documented on February 1, 2011.[2] As explained below, this Settlement is an excellent result for the Class. It provides significant monetary value without the risks of further and extended litigation. The Parties now ask the Court to order final approval of the Settlement and Plaintiff asks the Court to award attorneys' fees and costs to class counsel.

The total settlement fund is $1,746,000.00, inclusive of class member payment, attorneys fees, and an incentive award, but net of costs of notice and administration.[3] The settlement is structured into two classes. Subclass 1 represents all consumers about whom NCO obtained and used a consumer report, regardless of whether the report contained derogatory information or whether the consumer was thereafter employed. It is a "claims-based" settlement whereby class members needed to actively submit a claim in order to obtain monetary benefit.[4] As discussed below, the claims rate in this case is approximately 19.6 %, with 6,932 of 35,212 Subclass 1 members claiming into the $743,850.00 Subclass 1 fund (net of requested attorneys fees). If the Court were to award Plaintiff and Class Counsel's attorneys fees, costs and incentive award requests stated herein, the net payment to each claim-in class member will be $107.30. The gross amount would be $136.85, with roughly $29.00 of attorneys fees and costs requested from this amount.

---

[2] Both parties agree that the settlement would not have occurred at this stage but for the efforts of Judge Dohnal.
[3] Plaintiff negotiated for such costs to be paid by Defendants outside of the settlement fund.
[4] NCO argued and the Plaintiff, through Judge Dohnal, accepted that the claims process would be appropriate for Class One. Class One asserted the claim with the lesser litigation value, included members who remained employed by NCO and was overly inclusive as an undetermined number of persons who were included within the notice list would have received alternate § 1681b(b)(2) disclsoures.

Subclass 2 consists of all of these Subclass 1 members who, as a result of the report, suffered an adverse action (e.g. they were not hired).  The Subclass 2 settlement is not a claim-in settlement.  Subject to the same above assumptions, all Subclass 2 members will receive a net cash payment of $173.60.    The gross amount would be $240.00, with roughly $67.00 of attorneys fees and costs requested from this amount.

In addition to this consideration, NCO has also agreed to implement corrected FCRA compliance procedures and pay the costs of settlement administration and notice, subject only to the possible recovery of no more than $100,000.00 in uncashed settlement checks to offset some of these costs.   None of the other claim or uncashed check proceeds will revert to NCO.

The class notice process itself was negotiated and ultimately implemented.  This process was certainly best available given the factors of this case.  While it is almost always difficult to obtain current addresses and identification information on class members, especially those who may themselves have a criminal records history, in this case Plaintiff negotiated a multi-layered process to obtain current addresses including the use of NCO business records (many class members would still have been employed), the United States Postal Service's National Change of Address (NCOA) database, skip-trace searches from LexisNexis and even credit header searches from the credit bureau Trans Union.  (Margaret Campos Decl. ¶¶ 6-7).  Ultimately, multiple mailing sequences were made – the initial re-mails from returned notices with forwarding addresses, the updated addresses from LexisNexis and the updated addresses from Trans Union.  *Id.*  As a backstop, the Plaintiff negotiated and NCO agreed to fund a national Internet website to provide passive notice.  After such notice, none of the Class Members have objected and only 15 have requested exclusion from the Settlement.

Attorneys' fees and costs were negotiated separately and only after class relief was already negotiated and settled. Fees and costs are requested as a percentage of the cash fund recovered for the class. In this case, Class Counsel requests 27.5% of the fund, whish is well within the bell-curve range of 25-40% most often requested by counsel and awarded by the courts in class action cases.

Viewed objectively, the settlement is an excellent result for the class. Indeed, the class member response has been overwhelmingly positive. With 24,835 notices delivered nationwide, 6,932 have made a claim and not a single class member has made an objection. Only 15 class members (.0006% of the class members who received notice) have asked to be excluded from the settlement. Each Subclass 1 claimant will receive a check for at least $107.00, and the members of Subclass 2 should receive at least $170.00 each. By any account, this settlement is a resounding success for the class members. Accordingly, Plaintiff submits this Memorandum in Support of the Parties' joint Fed. R. Civ. P. 23(e) motion for a final order granting final approval to and directing implementation of the Settlement. Plaintiff and her counsel also move the Court without NCO's objection for an order approving an incentive award to the Plaintiff as the Class Representative and awarding attorneys' fees and out-of-pocket expenses.

## II.   ARGUMENT

### A.   The Proposed Settlement is Fair, Reasonable, and Adequate and Should Be Approved.

#### 1.   The Standard for Judicial Approval of Class Action Settlements

There is a strong judicial policy within this Circuit favoring resolution of litigation prior to trial. *See, e.g., S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("[t]he voluntary resolution of litigation through settlement is strongly favored by the courts") (citing *Williams v. First Nat'l Bank,* 216 U.S. 582 (1910)). Settlement spares the litigants the

uncertainty, delay and expense of a trial and appeals while simultaneously reducing the burden

on judicial resources. As the court in *S.C. Nat'l Bank* observed:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

In order to safeguard the interests of the absent class members, all class settlements and

the corresponding later dismissal of the case, requires Court approval.  Fed. R. Civ. P.

23(e)(1)(A).  The process for that approval is governed by Rule 23(e), which provides, in

relevant part:

> (e) Settlement, Voluntary Dismissal, or Compromise.
>
> (1)(A)  The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.
>
> (B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.
>
> (C) The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.
>
> (2) The parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(e)(1) must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

Rule 23(e) thus imposes two basic requirements on the parties and on the Court before

the approval of a class settlement and dismissal.  First, the Court must determine that notice was

directed "in a reasonable manner to all class members."  Fed. R. Civ. P. 23(e)(1)(B).  Second, the

Court must determine that the settlement "is fair, reasonable, and adequate."  The parties address

each of these requirements.

Federal jurisprudence strongly favors resolution of class actions through settlement. *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999); *see* Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Rule 23 requires Court review of the resolution of a class action such as this one. Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during the settlement negotiations. *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 (S.D. W. Va. 2002) (*citing In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)). The Court may approve a settlement only after a hearing and on finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances*." In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (*quoting S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. at 339).

In determining whether a given settlement is reasonable, the court should avoid transforming the hearing on the settlement into a trial on the merits regarding the strengths and weaknesses of each side of the case. *Flinn v. F.M.C. Corp*, 528 F.2d 1169, 1172-73 (4th Cir. 1975). Ultimately, the approval of a proposed settlement agreement is in the sound discretion of the Court. *Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995)(citing *Jiffy Lube,* 927 F.2d at 158*).*

## 2.    The Notice to the Class Members was Reasonable.

In a settlement class maintained under Rule 23(b)(3), the class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e).  Rule 23(e) specifies that "[n]o class action may be 'dismissed or compromised without [court] approval,' preceded by notice to class members."  Fed.R.Civ.P. 23(e).  Rule 23(c)(2) requires that notice to the class must be "the best practicable under the circumstances, including individual notice to all member who can be identified through reasonable effort."  Fed.R.Civ.P. 23(c).  The Rule also requires that the notice inform potential class members that (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who does not opt out may appear through counsel.  *Id.*  The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient.  *See* Federal Judicial Center, *Manual for Complex Litigation* § 21.312 (4th 2004).

The class list was compiled via a joint effort involving Class counsel, NCO and the Settlement Administrator.  Together, data from multiple sources was cross-referenced to identify the unique class members with maximum precision and then to supply the most recent address information available.  Initially, NCO compiled its internal record of potential class members from active and archived employment application and hiring data.  The addresses provided were then checked against the United States Postal Services' National Change of Address ("NCOA") database.[5]  Once the class list was compiled, notice was provided by First class direct mail, postage pre-paid.  The professional class action administrator generated and mailed the notices.  (Margaret Campos Decl. ¶¶ 6-7).  A number of the notices were returned with new forwarding

---

[5] The NCOA database "is a secure dataset of approximately 160 million permanent change-of-address (COA) records consisting of the names and addresses of individuals, families and businesses who have filed a change-of-address with the USPS" https://ribbs.usps.gov/index.cfm?page=ncoalink last viewed on May 11, 2011.

addresses.   Those were re-mailed.   *Id.* ¶ 7.   Other returned mail class members were then subjected to a second screening and mailing process.   The Parties sought and obtained an order from the Court permitting the use by the Settlement Administrator of consumer reporting data – the most current private data available.  (Docket No. 51).   First, Lexis-Nexis' "Accurint" product was used and this provided additional addresses for approximately 10,337 class members. Second, the Settlement Administrator obtained current Trans Union credit reporting identity information for an additional 10,250 class members.   *Id*. ¶ 7.   After this re-mailing, the Settlement Administrator was able to find and confirm delivery of notices to 27,842 of 35,212 class members.  *Id.* ¶ 6-7.   The efforts used to identify class member addresses is absolutely as thorough as could have been accomplished shy of hiring a private investigator to search for each identified class member.  Plaintiff's counsel is unaware of any other class case in this District or Circuit with similar or even comparable claims and class membership with as thorough an address search as in this instance.  Plaintiff's counsel is also unaware of any better alternatives that could have been attempted – any rocks left unturned.

As this Court has held, "[w]hat amounts to reasonable efforts under the circumstances is for the Court to determine after examining the available information and possible identification methods . . . 'In every case, reasonableness is a function of [the] anticipated results, costs, and amount involved.'"  *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003) (citations omitted).   The Supreme Court has concluded that direct notice satisfies due process, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985), and other courts —including this court and others within the Fourth Circuit — have approved mailed-notice programs that reached a comparable or even smaller percentage of class members than the Notice reached in this case. *See In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where

direct mail portion was estimated to have reached 80% of class members); *Martin v. United Auto Credit Corp.*, 3:05cv00143 (E.D. Va. August 29, 2006) (Final Order approving class notice with approximately 85% delivery).

As a backstop, the Parties also created a web link notice containing copies of the class notice.  Internet email and website communications are routinely included in notification requirements of class action settlements. *See Browning v. Yahoo! Inc.*, 2006 WL 3826714 (N.D.Cal, 2006); *Farinella v. Paypal, Inc.*, 2009 WL 1211912 (E.D.N.Y., 2009); *Choicke v. Slippery Rock Univ.*, 2007 WL 2317323 (W.D.Pa., 2007); *Todd v. Retail Concepts, Inc.*, 2008 WL 3981593 (M.D.Tenn., 2008).

The parties also served notice of this settlement on the relevant state and federal authorities as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715. As is obvious from the Court's docket, none of these agencies or states has objected to the Settlement.

The Parties' efforts to provide class members with notice of the settlement makes it clear that such notice was the best available notice under the circumstances given:  (a) the available information; (b) the possible identification methods; (c) the number of class members; and (d) the amount of the settlement.   The Parties have complied fully with the Court's Preliminary Approval Order, and have taken reasonable steps to ensure that the Class Members were notified — in the best and most direct manner possible — of the Settlement's terms and excellent benefits.

      **3.**     **An Analysis of the *Jiffy Lube* Factors Demonstrates that the Settlement is Fair and Reasonable**

The next phase of the Court's determination of compliance with Rule 23(e)(1)(C) typically requires a two-part analysis, often referred to as the *Jiffy Lube* factors. The Court must determine whether the settlement is "fair and reasonable" and then whether the settlement is "adequate." The approval of a proposed settlement agreement is in the sound discretion of the Court. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158.

The first step in the *Jiffy Lube* analysis is a determination as to the fairness of the settlement. The fairness factors are critical to the protection of the class members from unscrupulous class counsel and relate to whether there has been arm's length bargaining. *See In re Mid-Atlantic Toyota Antitrust Litig.,* 564 F.Supp. 1379, 1383 (D. Md. 1983); *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991). The court must consider four factors: (i) the posture of the case at the time of settlement; (ii) the extent of discovery that has been conducted; (iii) the circumstances surrounding the negotiations; and (iv) the experience of counsel. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158-59; *see also In re Microstrategy, Inc. Sec. Litig.,* 148 F.Supp.2d at 663-64; *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F.Supp. 499, 501 (E.D. Va. 1995). A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's length negotiations. *See South Carolina Nat'l Bank,* 139 F.R.D. at 339. As described below, the settlement reached in this case is clearly fair and each of the *Jiffy Lube* factors are satisfied.

The Parties agreed to settle only after conducting sufficient merits-related discovery, formally and informally. The Parties have also conducted extensive and substantive settlement talks, including a court-ordered settlement conference before Magistrate Judge Dohnal. Nevertheless, the case settled at an early posture – dispositive motions and more extensive discovery was still to come. The posture of settlement is not a factor that supports approval, but

under the facts in this case, it is not one that militates against it.  *See In re Micro Strategy, Inc.*, 148 F. Supp. 2d at 664 (approving of proposed settlement despite the fact that it was reached "early" in the litigation).  The allegations in this case were similar to those in several other cases litigated before the Court deep into the docket.  *See Beverly v. Wal-Mart Stores, Inc*, No. 3:07cv469.  The attorneys for each party had a full understanding of the respective leverages in the case, as did Judge Dohnal.  Had the case not then settled, the Plaintiff was sufficiently informed to move for contested class certification.

There are advantages to the parties and to the docket when opposite counsel are already up to speed on the legal and factual issues in a case and in a field of practice.  *See S. Carolina Nat'l Bank*, 139 F.R.D. at 339 (concluding fairness met where settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law).  Experienced counsel negotiated the Settlement, making their first priority bringing the best benefit possible to the Classes.  Class Counsel has extensive experience in both FCRA and class action litigation, having been involved in now numerous large FCRA class actions.  *Soutter v. Equifax Info. Services, LLC*, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases.") Proposed Lead Class Counsel was objectively selected as Top 500 Plaintiff's attorneys in the nation, in significant part because of their success in FCRA class action litigation.[6]  The Parties also engaged in discovery sufficient to aid Counsel and the Court in evaluating Plaintiffs' claims

---

[6] *See* http://www.lawdragon.com/index.php/newdragon/lawyer_profile/141176 last viewed on May 11, 2011.

and Defendants' defenses.    These facts further point to the conclusion that the Proposed

Settlement was the product of arm's-length negotiation by experienced counsel and thus warrants

preliminary approval.  *See In re Jiffy Lube*, 927 F.2d at 159; *see also Strang v. JHM Mortgage*

*Sec. Ltd. P'ship*, 890 F. Supp. 499, 501-02 (E.D. Va. 1995) (concluding fairness requirement met

where "plaintiffs' counsel, with their wealth of experience and knowledge in the securities-class

action area, engaged in sufficiently extended and detailed settlement negotiations to secure a

favorable settlement for the Class").

The Parties fairly reached the Settlement.  An arms-length negotiation process as in the

present instance, before a federal magistrate judge more than satisfies the requirement that the

settlement not be one brokered through "collusion or coercion."  *See, e.g., Wal-Mart Stores, Inc.*

*v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005); *Weiss v. Regal Collections*, Civ. No.

01CV881-DMC, 2006 WL 2038493, at *2 (D.N.J. July 19, 2006).

### 4.    An Analysis of the *Jiffy Lube* Factors Demonstrates that the Settlement is Adequate

The Court must also determine whether the proposed class settlement is substantively

"adequate", the second prong of the *Jiffy Lube* analysis.   The Fourth Circuit's decision in *Jiffy*

*Lube* teaches that the adequacy inquiry is guided by evaluating:  (1) the relative strength of the

plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the

plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense

of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a

litigated judgment, and (5) the degree of opposition to the settlement.  *In re Jiffy Lube, 927 F.2d*

*at 159.*  Plaintiff has at all times believed that this case was very strong in many regards – basic

liability and the personal characteristics of the named Plaintiff.  However, the largest class,

Subclass 1, alleged a claim that was almost purely procedural – the failure to properly obtain

employee or applicant permission before using their background check.  And Subclass 2 by its nature includes class members – the percentage dependent upon the accuracy rate of the subject reports – who had a criminal record in their file.  Further, to prevail the Plaintiff would need to establish that the NCO violations were "willful," a burden that requires a degree of reckless or knowing culpability on the part of NCO.  15 U.S.C. § 1681n.  As a practical matter, a jury might be persuaded that the Defendant at least believed that it was legally entitled to act in the manner of its conduct, particularly when very few courts have weighed in on the issue.  It would thus be conceivable that a jury could find that the Defendants violated the Fair Credit Reporting Act, but did so only negligently.  Such a finding would preclude the class members from recovering statutory or punitive damages at all.

The determination as to when the appropriate time to settle a case is one that is entrusted to experienced class counsel.  It is often difficult to transition off of a litigation track that is focused on an upcoming trial and meeting the various burdens of proof to a mindset that considers that every case – no matter how conceivably strong it may seem – will always have an element of risk at its core.  Settlement is the only outcome that allows both sides to assure themselves of a certain ending to the litigation, alleviating both the risk and cost inherent in further litigation to both sides, as well as the additional burden on the Court.  This case was no exception, and in fair consideration of the strengths and weaknesses (as well as with significant encouragement from Magistrate Judge Dohnal), Plaintiffs' counsel felt that settlement was appropriate at this juncture.  The old adage, "a bird in hand is worth two in the bush" applies with particular force in this case.  *See Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.,* No. 85CV4038,  1987 WL 7030, at *2 (S.D.N.Y. Feb. 13, 1987) (concluding that because continued prosecution of the action would have been expensive and time-consuming, and would have

involved substantial risks, "it [was] not unreasonable for the plaintiff class to take a 'bird in the hand' ''); *Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540, 547 (D.Colo. 1989) (noting that "[i]t has been held prudent to take 'a bird in the hand instead of a prospective flock in the bush'" in weighing the value of an immediate recovery against "the mere possibility of future relief after protracted and expensive litigation") (quoting *West Virginia v. Chas. Pfizer & Co.,* 314 F.Supp. 710, 740 (D.W.V. 1970)); *In re Microstrategy,* 148 F.Supp.2d at 667.

By its terms, the settlement provides substantial monetary consideration to all class members.  Additionally – while it does not concede liability – the Defendant has agreed to change its procedures and processes that were at the heart of this case.  These benefits realized by the class members immediately are significant, particularly given the time value of money.  A dollar realized today is worth considerably more than the same dollar finally collected years later, even assuming the success on the merits and on appeal, and the ability to collect any judgment that was rendered.  This factor weighs in favor of the adequacy of the settlement.

The Defendant is this case is worth considerably more than any judgment that might realistically have been rendered and upheld on appeal, at least for the Virginia-only class, particularly when the Court considers the value of any insurance policies which might provide coverage for these claims.  This factor does not heavily weigh for or against the adequacy of the settlement.

It is telling that despite the confirmed delivery of 27,842 notices, not a single class member has made an objection.  Only 15 class members (.0005% of the class members who received notice) have asked to be excluded from the settlement.  In contrast, 6932 class members (24.8% of Subclass 1 who were so required) have filed claims.  Where the response can be viewed as "[s]uch a lack of opposition to the partial settlement strongly supports a finding of

adequacy, for '[t]he attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court.' *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir.1975)." *In re Microstrategy,* 148 F.Supp.2d at 668.  As Judge Ellis has previously explained, "[b]ecause 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy,' the lack here of any objections to the partial settlement and the small number of class members choosing to opt-out of the case strongly compel a finding of adequacy. *Sala v. Nat'l R.R. Passenger Corp.,* 721 F. Supp. 80, 83 (E.D. Pa. 1989)." *Id.*

> **B.      The Court should Approve the Request for an Award of Incentive Payment, Attorneys Fees and Reimbursement of Expenses**

> **1.      The Court should Award Incentive Payment to the Class Representative**

The Court should also approve a modest incentive or service awards for the named Plaintiff.  Plaintiff requests an incentive award of $5,000 for her service as a named class representative.  Defendants have agreed to an award of attorneys' fees and costs capped at 27.5%. Plaintiff and her counsel ask for the incentive award as a deduction against this attorney's fee percentage – the incentive award would be paid out of class counsel's fees not as additional payment by NCO.  She took an active role in the case, participated in the drafting of the factual sections of the pleadings, and was actively involved with her counsel in prosecuting the case. The amount sought has been approved by every other District Judge in this Division.  *See e.g. Beverly v. Wal-Mart Stores, Inc*, No. 3:07cv469; *Williams v. Lexis Nexis Risk Management*, No. 3:06cv241; *Capetta v. GC Servs. LP*, No. 3:08CV288-JRS (E.D.Va. April 27, 2011); *Makson v. Portfolio Recovery Assoc., Inc.,* No. 3:07CV982-HEH (E.D.Va. Feb. 9, 2009).  Particularly in light of historical incentive awards both within and outside this District, the incentive awards

sought are appropriate.  *See e.g. Staton v. Boeing Co*., 327 F.3d 938, 976-77 (9th Cir. 2003); *In re Bancorp Litig*., 291 F.3d 1035, 1038 (8th Cir. 2002); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

### 2.    The Court should Award Attorneys' Fees Using the Percentage of Fund Method

The Supreme Court has consistently calculated attorneys' fees in common funds cases on a percentage-of-the-fund basis.  *See Sprague v. Ticonic Nat'l* Bank, 307 U.S. 161, 165-67 (1939); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478-79 (1980); *Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney* Fees, 108 F.R.D. 237, 242 (Oct. 8, 1985)(noting that fee awards in common funds cases have historically been computed based on a percentage of the fund).  The Supreme Court has never adopted the lodestar method over the percentage of recovery method in a common fund case, even when lower federal courts began using the lodestar approach in the 1970s.  *See Shaw v. Toshiba Am. Info. Sys., Inc.* 91 F. Supp. 2d 942, 943 (E.D. Tex. 2000); *see also Manual for Complex Litigation* § 24.121 at 210.

Since *Blum,* virtually every Circuit Court of Appeals has joined the Supreme Court in affirmatively endorsing the percentage of recovery method as an appropriate method for determining an amount of attorneys' fees in common fund cases.  *See In re GMC*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047-50 (9th Cir. 2002); *In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.,* 56 F.3d 295 (1st Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 515-16 (6th Cir. 1993); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 49 (2d Cir. 2000).

17

In the Fourth Circuit, attorneys' fees in common fund cases such as this one are almost universally awarded on a percentage-of-the-recovery basis. *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007); *see DeLoach v. Philip Morris Cos.*, No. 00-1235, 2003 WL 23094907, at *3 (M.D.N.C. Dec. 19, 2003) (citing, with approval for this same proposition, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003)); *see also Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) (explaining "[a]lthough the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases.").

The Fourth Circuit has not established a benchmark for fee awards in common funds cases, but district courts within the Fourth Circuit have noted that most fee awards range from 25 percent to 40 percent of the settlement fund. Percentage-fee awards are exactly what the name suggests—class counsel fees are determined as a percentage of the total settlement fund. This Court has recognized the importance of incentivizing experienced class counsel to take on risky cases. *See, e.g., In Re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d at 788. In fact, a comprehensive study of attorneys fees in class action cases notes "a remarkable uniformity in awards between roughly 30% to 33% of the settlement amount." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements:  An Empirical Study*, 1 J. of Empirical Legal Studies 27, 31, 33 (2004). This holds true even in instances where the class recovery runs into the hundreds of millions of dollars. *See, e.g., In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d at 295 (approving award of thirty percent of $220 million); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1136 (W.D. La. 1997) (awarding thirty-six percent of $125 million). *In re US Bancorp Litig.*, 291 F.3d 1035, 1038 (8th

18

Cir. 2002) (approving award of 36% of $3.5 million settlement fund); *Gwozdzinnsky v. Sandler Assoc.*, No. 97-7314, 1998 WL 50368, 159 F.3d 1346 (2d Cir. 1998)(table)(affirming district court's award of 25% of $1 million common fund)(unpublished); *In re Educ. Testing Serv.*, 447 F. Supp. 2d 612, 631 (E.D. La. 2006)(concluding the customary fee award for class actions "is between 22% and 27%"); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *1 (E.D. Mich. June 27, 2006) (awarding fee of 28.5% of $28 million settlement fund); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (awarding 25% of $80 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys fees in amount of 33 1/3% of $1.5 million settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33.3% of $3.8 million settlement fund); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97CV69, 1999 WL 1027050, at *1-2 (N.D. W. Va. May 12, 1999) (awarding 30.6% of approximately $400,000 settlement fund, noting that "[a]n award of fees in the range of 30% of the fund has been held to be reasonable. . . . Fees as high as 50% of the fund have been awarded.") (internal citations omitted).

In this case, the Defendants agreed not to oppose Class Counsel's fee request of up to 27.5% of the full common fund.   As with any class case that they agree to take on, Plaintiffs' counsel lives by the result that they obtain for the class members.[7]   In this case, where they bore the risk of the litigation entirely and advanced significant funds in furtherance of the litigation,

---

[7] In fact, Plaintiffs' lead counsel, have remained unwavering in their fee requests as a percentage of the recovery in other class settlements.  For example, Bennett is also lead counsel in the *Conley v. First Tennessee* class settlement mediated by Magistrate Judge Anderson in Alexandria last month.  *Conley v. First Tennessee Bank, N.A.,* No 1:10CV1247-TSE-JFA (E.D.Va.).  During the mediation, Plaintiff's counsel disclosed up front that they would not ask for the larger hourly recovery and instead depend on the cash benefit produced. The same position was taken in *Mayfield v. Memberstrust Credit Union,* 3:07cv506 (November 7, 2008), in which after a small class size was established, the percentage of fee recovery was $8,300, significantly below the actual time in the case.  Class counsel believe that their compensation should always be dependent upon and tied to producing a benefit to their clients, members of the class.

Class Counsel submits that a 27.5% award is reasonable, particularly after nearly three years of litigation in a fiercely fought case.

Class counsel in this case took the entirety of the risk of the litigation on their shoulders, spending nearly three years litigating the case to this conclusion.  As several of the largest FCRA class settlements were litigated and approved in Virginia, the Court is in a position to compare the potential attorneys' fees in this case with those approved in two recent Virginia FCRA cases settled on a class basis.  *Williams v. Lexis Nexis Risk Management*, No. 3:06cv241 (Payne, J.)(approving a 27.5% of fund fee, in a settlement with a $22 million common fund); *Beverly v. Wal-Mart Stores, Inc*, No. 3:07cv469 (Williams, J.) (approving a 27.5 % of fund fee in a settlement with a $6.89 million common fund).  Prior to the first of these settlements, the largest FCRA class settlement was *Clark v. Experian Info. Sols.,* No. 8:00cv1217-22*,* 2004 WL 256433 (D.S.C. 2004)[8], a settlement in which no money was paid to the class with $15 million in attorneys fees approved (after only four depositions, one round of discovery and limited motions practice).  The benefit to justify such a fee was simply the injunctive relief and remedial changes to the manner in which each national consumer reporting agency would furnish class member credit reports.[9]  In contrast, despite the greater success for the Class in this case, Plaintiff's counsel would be bound to seek only a proportionate recovery and a percentage below each of these previous cases.

In this case, and in all cases in which Plaintiff's counsel will come before this Court, they submit that the proper measure of compensation should be driven by the benefit actually

---

[8] *Clark* involved the improper reporting of "included in bankruptcy" account notations on the credit reports of co-obligors who had not filed for bankruptcy themselves.

[9] Present Class counsel, Mr. Bennett, appeared in the case as lead objectors' counsel.  He was successful in forcing some changes to the settlement, but despite objection, he was unable to prevent the payment of such a large fee to the attorneys to the exclusion of the class.

obtained for the class members.  Because Class Counsel's requested fee is reasonable under the circumstances of this case and the applicable law, the Court should award it.

## III.     CONCLUSION

In summary, the Parties have reached a settlement in this case that provides genuine relief to the class members.  The settlement is an excellent result considering the contentiousness and status of the litigation, the outcome actively mediated by Judge Dohnal, the amount of money that will be paid to each class member, and the fact that this class provided the impetus for the Defendant's agreement to change its procedures.  Each class member received the benefit of the settlement, regardless of whether they were aware that the Defendants' conduct violated the FCRA and even whether they suffered actual harm.  In addition, the terms of the Settlement as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal satisfy the Fourth Circuit's strictures for final approval.  The Plaintiff respectfully moves that the Court grant her motion for final approval of this settlement and award the incentive payment and attorneys fees and costs as requested herein.


ALISIA DAILY and GREGORY
DANIELS, on behalf of themselves
and on behalf similarly situated
individuals,

_____/s/_____
Leonard A. Bennett, Esq. , VSB #37523
Attorney for Plaintiff


CONSUMER LITIGATION
ASOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606

(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of May, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

William Delaney Bayliss
Williams Mullen
1021 E Cary St
PO Box 1320
Richmond, VA 23218-1320
Email: bbayliss@williamsmullen.com

David Israel
Sessions Fishman Nathan & Israel LLP
3850 N Causeway Blvd
Lakeway Two Suite 200
Metairie, LA 70002
Email: disrael@sessions-law.biz

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION  ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net